**Opinion issued August 2, 2018**



In The

# Court of Appeals

For The

# First District of Texas

_____

### NO. 01-17-00198-CV
_____

**TRUYEN LUONG, Appellant**

**V.**

**ROBERT A. MCALLISTER, JR. AND ROBERT A. MCALLISTER JR AND ASSOCIATES, P.C., Appellee**

---

**On Appeal from the 61st District Court**
**Harris County, Texas**
**Trial Court Case No. 2016-15069**

---

## MEMORANDUM OPINION

Appellant, Truyen Luong, challenges the trial court's rendition of summary judgment in favor of appellees Robert A. McAllister, Jr. and Robert A. McAllister, Jr. and Associates, P.C. (collectively, "McAllister"), in his suit against them for

breach of contract, quantum meruit, and unjust enrichment. In three issues, Luong contends that the trial court erred in granting McAllister summary judgment.

We affirm, in part, and reverse and remand, in part.

## Background

In his first amended petition, Luong alleged that in 2010, he and McAllister "entered into an agreement" wherein McAllister, an attorney, would pay Luong to perform "paralegal work and other related work to assist [him] in his cases involving claims arising from the BP oil spill." Luong performed "the work requested by" McAllister, which included "investigation, translation, research, document collection, document creation, preparing and filing claims, litigation support, calculation of damages, travel, research re: lost income, [and] dealing and negotiating with the Gulf Coast Claims Facility, BP, and Deepwater Horizon." He further alleged that he "often worked fourteen hours per day" for McAllister, who paid Luong in "part for his work." However, McAllister still owes him "not less than $503,080.00."

In his claim for breach of contract, Luong alleged that he "performed all obligations required of him by the [a]greement" and McAllister "has failed and refused to pay" the remaining $503,080.00 owed to him.

In his claim for quantum meruit, Luong alleged that McAllister asked him "to perform the services rendered, knew the services were being rendered by" him,

2

and "accepted such services and the benefits received as a result of such services." He further alleged that the "reasonable value" of the services that he rendered to McAllister, for which he has not been compensated, is "not less than $503,080.00."

In his claim for unjust enrichment, Luong alleged that McAllister "will be unjustly enriched" if he is "allowed to retain the benefit conferred [upon] him without paying the reasonable value of the services provided by" Luong.

McAllister answered, generally denying Luong's allegations and asserting various affirmative defenses. He also filed a summary-judgment motion, arguing that he was entitled to judgment as a matter of law on all of Luong's claims because "the undisputed facts in this case and [McAllister's] summary judgment evidence conclusively establish each essential element of the affirmative defense[s] of illegality and/or unclean hands." Specifically, McAllister argued that the alleged agreement that Luong relies on for his breach-of-contract claim is void and barred by the defense of illegality because it was based on "an oral agreement to split a fee with a non-lawyer," "arising out of alleged solicitation of clients by" a non-lawyer, which are prohibited by statute and disciplinary rules. McAllister further argued that Luong could not recover under the theories of quantum meruit or unjust enrichment because "[i]llegal void contracts cannot be enforced in equity" when there is a "lack of clean hands." McAllister attached to his motion

Luong's first amended petition, McAllister's supplemental answer, and excerpts from Luong's deposition testimony.

In his response to McAllister's summary-judgment motion, Luong admitted that "[t]he original verbal agreement between" McAllister and Luong was that Luong "would solicit clients and work on their cases" and, "in exchange," McAllister would pay Luong "a portion of the fees that [he] received on such cases." Regardless, he argued that because he was only "suing for work he performed that did not involve the solicitation of clients for" McAllister, the defense of unclean hands based on an illegal solicitation agreement is inapplicable. Luong further argued that a genuine issue of material fact precluded summary judgment because he "submitted proof that he performed legal and compensable work and has not been paid for such work." Luong attached to his motion excerpts from his deposition testimony and his own affidavit.[1]

In his deposition, Luong testified that he worked for McAllister from 2005 until 2014. He explained that he "brought a lot of customer[s] to Mr. McAllister" and in 2010, he and McAllister orally agreed to a fee-sharing agreement to compensate Luong for bringing in clients and for the work that he performed on those clients' files. Specifically, they agreed to a "50/50 split" of attorneys' fees recovered on "files" that did not "go to court" and a "one-third split" of attorneys'

---

[1] We need not address any challenges to this affidavit on appeal because we do not rely on it in our analysis.

4

fees recovered on "files" that did "go to court." Luong further characterized this agreement as "a result of securing clients and a result of percentage of settlement." He referred to the clients he "brought in" as his "customers," and he did not work on matters for McAllister's other clients.

And, although Luong testified that he is not a licensed Texas attorney, he described his work as that "of a professional lawyer," claiming that he would "get the client" and "work[]" the file "from A to Z." McAllister did not "do any work" except sign the claims that were submitted to "BP in order to get paid." Luong did not keep a log or know the "exact number of hours" that he worked for McAllister, but he noted that it was "a lot," he often worked fourteen-hour days, and McAllister did not pay him "enough compared to what [he] put into it."

The trial court, without specifying the grounds, granted McAllister's summary-judgment motion on all of Luong's claims. Luong filed a motion for new trial, which the trial court denied.

## Standard of Review

We review a trial court's summary judgment de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005); *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). In conducting our review, we take as true all evidence favorable to the non-movant, and we indulge every reasonable inference and resolve any doubts in the non-movant's favor. *Dorsett*, 164 S.W.3d

5

at 661; *Knott*, 128 S.W.3d at 215.  If a trial court grants summary judgment without specifying the grounds for granting the motion, we must uphold the trial court's judgment if any of the asserted grounds are meritorious.  *Beverick v. Koch Power, Inc.*, 186 S.W.3d 145, 148 (Tex. App.—Houston [1st Dist.] 2005, pet. denied).

To prevail on a matter-of-law summary-judgment motion, the movant must establish that no genuine issue of material fact exists and the trial court should grant judgment as a matter of law.  TEX. R. CIV. P. 166a(c); *KPMG Peat Marwick v. Harrison Cty. Hous. Fin. Corp.*, 988 S.W.2d 746, 748 (Tex. 1999). When a defendant moves for a matter-of-law summary judgment, it must either: (1) disprove at least one essential element of the plaintiff's cause of action or (2) plead and conclusively establish each essential element of an affirmative defense, thereby defeating the plaintiff's cause of action.  *Cathey v. Booth*, 900 S.W.2d 339, 341 (Tex. 1995); *Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995); *Lujan v. Navistar Fin. Corp.*, 433 S.W.3d 699, 704 (Tex. App.—Houston [1st Dist.] 2014, no pet.).  Once the movant meets its burden, the burden shifts to the non-movant to raise a genuine issue of material fact precluding summary judgment.  *Siegler*, 899 S.W.2d at 197; *Transcon. Ins. Co. v. Briggs Equip. Tr.*, 321 S.W.3d 685, 691 (Tex. App.—Houston [14th Dist.] 2010, no pet.).  The evidence raises a genuine issue of fact if reasonable and fair-minded fact

6

finders could differ in their conclusions in light of all of the summary-judgment evidence. *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007).

## Breach of Contract

In a portion of his second and third issues, Luong argues that the trial court erred in granting McAllister summary judgment on Luong's claim for breach of contract because the alleged illegality of a contract alone does not negate a cause of action for breach of contract, and McAllister failed to establish any wrongful conduct on the part of Luong to defeat his claim.

"[A] contract between an attorney and one not an attorney, providing that the [non-attorney] shall procure the employment of the [attorney] by a third person for the prosecution of suits to be commenced in consideration of a fee to be procured or collected therein, is void as against public policy, independent of statutes prohibiting the same." *Plumlee v. Paddock*, 832 S.W.2d 757, 758 (Tex. App.—Fort Worth 1992, writ denied) (quoting *Ford v. Munroe*, 144 S.W. 349, 349 (Tex. Civ. App.—Austin 1912, writ ref'd)). This type of barratry contract is prohibited by statute as well as by disciplinary rule.[2] *See* TEX. PENAL CODE ANN. § 38.12 (Vernon 2016); TEX. DISCIPLINARY RULES PROF'L CONDUCT R. 8.04(a)(9), *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G, app. A (Vernon 2013); *see*

---

[2] We do not express an opinion as to whether any conduct at issue in this case is criminally prosecutable.

7

*also Atkins v. Tinning*, 865 S.W.2d 533, 536 (Tex. App.—Corpus Christi-Edinburg 1993, writ denied) ("[B]arratry statute prohibits persons from taking the following actions with intent to obtain an economic benefit for themselves: . . . soliciting legal work for themselves or others . . . .").

Furthermore, "[a] contract to do a thing which cannot be performed without violation of the law" violates public policy and is void. *See Lewis v. Davis*, 199 S.W.2d 146, 148–49 (1947); *see also Montgomery v. Browder*, 930 S.W.2d 772, 778 (Tex. App.—Amarillo 1996, writ denied). The rationale behind the rule is not to protect or punish either party to the contract, but to benefit and protect the public. *See Montgomery*, 930 S.W.2d at 778; *see also Plumlee*, 832 S.W.2d at 759. Because of the presumption in Texas that contracting parties are knowledgeable of the law and contract accordingly, courts will generally leave the parties as they find them. *See Montgomery*, 930 S.W.2d at 778; *see also Plumlee*, 832 S.W.2d at 759. However, "[a]n illegal or unconscionable provision of a contract may be generally severed so long as it does not constitute the essential purpose of the agreement." *In re Poly-Am.*, *L.P.*, 262 S.W.3d 337, 360 (Tex. 2008). "Whether or not the invalidity of a particular provision affects the rest of the contract depends upon whether the remaining provisions are independent or mutually dependent promises." *Id.*

8

It is apparent from Luong's deposition testimony that he solicited clients for McAllister in exchange for an economic benefit, i.e., a fee-sharing agreement as compensation for the work he ultimately would perform on those files. Thus, the contract violates public policy and is void unless the offending provision can be severed from the rest of the agreement. *See Poly-Am.*, 262 S.W.3d at 360. Luong asserts that the fee-sharing agreement can be enforced independently from his agreement to solicit clients for McAllister. However, that is contrary to the evidence in the record. In his response to McAllister's summary-judgment motion, Luong admitted that "the original verbal agreement" between them was an agreement that Luong "would solicit clients and work on their cases and, in exchange, [McAllister] would pay [Luong] a portion of the fees that [he] received on such cases." This characterization is supported by the summary-judgment evidence. In Luong's deposition, he testified that their contract was "a result of securing clients and a result of percentage of settlement." He further explained that he only worked on the cases that he brought to McAllister and, in those cases, he was paid a percentage of the attorneys' fees recovered and not on an hourly basis.

Luong offers no basis for enforcing the contract, except for his assertion that he is not seeking to enforce the solicitation portion, but only the fee-sharing portion. However, based on the summary-judgment evidence, Luong's agreement

to solicit client's for McAllister constituted an "essential purpose" of their agreement and was mutually dependent on McAllister's promise to pay Luong a percentage of the attorneys' fees that he recovered for those clients as compensation for Luong's work on those files.[3] Accordingly, we hold that the contract was void due to illegality and that trial court did not err in granting summary judgment on Luong's breach-of-contract claim.

We overrule this portion of Luong's second third issues in which he challenges the trial court's summary judgment on his breach-of-contract claim.

## Quantum Meruit and Unjust Enrichment

In the remaining portions of his second and third issues, Luong argues that the trial court erred in granting summary judgment on his claims for quantum

---

[3] We further note that under the facts of this case, the fee-sharing portion of the alleged agreement also violates public policy. The Texas Disciplinary Rules of Professional Conduct do not give rise to a private cause of action, but a court "may deem these rules to be an expression of public policy, so that a contract violating them is unenforceable as against public policy." *Cruse v. O'Quinn*, 273 S.W.3d 766, 775 (Tex. App.—Houston [14th Dist.] 2008, pet. denied); *see also Dardas v. Fleming, Hovenkamp & Grayson, P.C.*, 194 S.W.3d 603, 613 (Tex. App.— Houston [14th Dist.] 2006, pet. denied) ("Although courts may, and often have, used these rules as a measure of public policy, they are not required to do so."). Texas Disciplinary Rules of Professional Conduct section 5.04(a) provides that "[a] lawyer or law firm shall not share or promise to share legal fees with a non-lawyer." The comments to this rule reveal that "[t]he principle reasons for these limitations are to prevent solicitation by lay persons of clients for lawyers and to avoid encouraging or assisting nonlawyers in the practice of law." TEX. DISCIPLINARY RULES PROF'L CONDUCT R. 5.04(a) & cmt. 1, *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G, app. A (Vernon 2013). That is exactly the situation presented in this appeal: Luong solicited clients on behalf of McAllister and effectively performed all of the work associated with those clients' files.

meruit and unjust enrichment because the "[a]lleged illegality of a contract, in and of itself does not negate his causes of action for . . . quantum meruit and unjust enrichment" and McAllister's summary judgment motion failed to establish any wrongful conduct on the part of Luong that would prevent his recovery. McAllister argues that Luong cannot recover on these claims because he cannot not establish them "without reliance upon his own illegal acts."

Quantum meruit provides an equitable remedy which does not arise out of a contract, but is independent of it. *Vortt Expl. Co. v. Chevron U.S.A., Inc.*, 787 S.W.2d 942, 944 (Tex. 1990). Founded on unjust enrichment, quantum meruit "will be had when non payment for the services rendered would result in an unjust enrichment to the party benefited by the work." *Id.* (internal quotations omitted). "Quantum meruit 'is based upon the promise implied by law to pay for beneficial services rendered and knowingly accepted.'" *Speck v. First Evangelical Lutheran Church of Houston*, 235 S.W.3d 811, 815 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (citing *Campbell v. Nw. Nat'l Life Ins. Co.*, 573 S.W.2d 496, 498 (Tex. 1978)). Generally, parties may recover in equity on an illegal contract if they prove their case without reliance on their own illegal act. *See Reich & Binstock, LLP v. Scates*, 455 S.W.3d 178, 184 (Tex. App.—Houston [14th Dist.] 2014, pet. denied) (allowing equitable relief where void fee-sharing agreement not basis of recovery for quantum meruit because evidence of work performed and not

11

compensated); *Plumlee*, 832 S.W.2d at 759 (refusing equitable relief where owner of ambulance company had no basis to recover under fee-sharing agreement with attorney without reliance on unlawful barratry agreement).

In this case, the only basis McAllister presented to the trial court for granting summary judgment to dismiss Luong's claims for quantum meruit and unjust enrichment was that "illegal void contracts cannot be enforced in equity because of a lack of clean hands." However, the summary-judgment evidence contains testimony from Luong that he "worked" a file from "A to Z" and, while he did not keep a log or know the "exact number of hours" he worked for McAllister, it was "a lot"[4] and he sometimes worked fourteen-hour days. He further testified that McAllister did not pay him "enough compared to what [he] put into it." In contrast, McAllister's summary-judgment motion and supporting evidence did not conclusively establish that Luong had been reasonably compensated for all of the work that he performed. Simply because Luong may not be entitled to compensation based on the fee-sharing agreement does not mean that he is not entitled to reasonable compensation for the work that he performed for McAllister.

---

[4]   McAllister asserts that Luong presented no evidence of work he performed for which he was not compensated and he cannot prove he is entitled to any additional compensation without relying on the void contract and his own illegal behavior. However, McAllister did not file a no-evidence summary-judgment motion. And Luong specifically testified that McAllister did not pay him "enough compared to what [he] put into it." Whether or not Luong can satisfy the elements of his equitable claims and what damages he is entitled to, if any, were not at issue in the underlying summary-judgment motion.

*See Reich*, 455 S.W.3d at 183–84 (expert witness entitled to payment under equitable theory despite void fee-sharing agreement where he "proved his case without relying on any 'illegal' act on his part").  The evidence in the record raises a genuine issue of material fact as to whether Luong can prove his claims for quantum meruit and unjust enrichment without relying on the void contract or any allegedly illegal acts on his part.   Accordingly, we hold that the trial court erred in granting summary judgment on these claims.

We sustain the portions of Luong's second and third issues in which he challenges the trial court's summary judgment on his claims for quantum meruit and unjust enrichment.  Having sustained these portions of Luong's second and third issues, we need not address his first issue in which he argues that the trial court erred in granting summary judgment on his claims for quantum meruit and unjust enrichment because McAllister allegedly "failed to establish . . . a necessary element of the affirmative defense–that he . . . [was] injured by Luong's allegedly wrongful conduct."

## Conclusion

We affirm the portion of the trial court's judgment in favor of McAllister on Luong's breach-of-contract claim, and we reverse the portion of the trial court's judgment in favor of McAllister on Luong's claims for quantum meruit and unjust enrichment, remanding these claims to the trial court for proceedings consistent with this opinion.


Terry Jennings
Justice

Panel consists of Justices Jennings, Keyes, and Higley.